STOULIG, Judge.
Plaintiff, Thomas Builders, Inc., obtained a judgment of $18,817.43 in a suit for the unpaid balance due for residential construction. Defendants, Dr. and Mrs. James S. Webb, have appealed, urging, as they did in the trial court, plaintiff’s unsatisfactory performance not only cancelled the original contract balance but also created a debt by plaintiff to defendants for the cost of remedying defective workmanship. In addition they reconvened for damages they incurred because plaintiff failed to complete the contract within the time stipulated. Joined as a third party defendant was the contractor’s surety, Fidelity and Deposit Company of Maryland. Judgment was rendered dismissing defendants’ reconventional demand and third party action.
*473 We affirm. Of the contract price with extras totaling $151,546.48, defendants paid $132,729.05, leaving an unpaid balance of $18,817.43. The residence at 400 Hector Street in Metairie was to be completed at the end of May 1973; however, five change orders for extras were entered after construction under the original agreement was in progress. Of these, three were authorized by either the architect, Paul Charbonnet, or Dr. Webb after the May 1973 completion date.[1]
Dr. Webb discharged Charbonnet as his architect sometime after June 1973. Char-bonnet testified that he had no complaints about plaintiff’s performance through the date of his own dismissal from the job, at which time plaintiff had completed 60 to 75 percent of the contract. In removing the architect, Dr. Webb hoped to accelerate the pace of construction that he felt was delayed at that time by friction between the construction superintendent, Carlo Costa, and the architect.
In any event, defendants moved into the residence on September 4,1973 while it was still incomplete. Ten days later they executed a formal acceptance which authorized the bank handling interim financing to release the final partial payment to Thomas (exclusive of the 10-percent retainage and incidental charges withheld until the expiration of the 30-day lien period after acceptance). At the time the acceptance was made the contractor agreed to complete items on a punch list compiled by his representative and Dr. Webb prior to the acceptance. The trial court concluded the contractor made a good faith effort to complete the items enumerated but defendants refused to let plaintiff’s men return to the job.
Appellant’s first complaint is that the trial court erred in disallowing their claim for moving expenses, rental and furniture storage fees occasioned by plaintiff’s failure to complete the work within the time specified. The evidence establishes defendants sanctioned the extension in construction and even expanded the work originally contracted for after the May 31 deadline. No damages are due under these circumstances. See C.C. arts. 1807 and 1811.
The next complaint of error is that the trial court upheld the formal acceptance signed by Dr. and Mrs. Webb on September 13, 1973. In rejecting the argument they were forced to sign in order to have a place to live, the trial judge in verbal reasons cited the facts that militate against this conclusion. We quote:
“The Court finds these facts to be significant. There is no doubt there was some dispute between the parties concerning the work after Mr. Charbonnet left the job. Mr. Charbonnet testified before • he left the job that he had no complaint. The Court finds significant the fact that the house was occupied by the owners on September 4,1973, that an acceptance was signed by both Dr. and Mrs. Webb with a punch list attached, on September 13, 1973, some week after they had moved in. And, further, that the house or, that an extra on the construction contract was billed and paid sometime around October 5th, which was about a month after the occupancy of the house, which was occupied on September 4.”
Appellants next complain the trial court erred in failing to award damages for remedial work; however, the reconventional demand through which they claimed this amount was not proven with that certainty required by law. The plaintiff in reconvention carries the same burden of proof as does the plaintiff in the original cause and that is to establish the claim by a preponderance of the evidence. Rapides Packing Company v. Viking Packing Co., 246 So.2d 725 (La.App. 4th Cir. 1971).
*474 The proof offered in support of the recon-ventional demand was vague and unconvincing. For example, Dr. Webb testified he spent more than $100,000.00 on remedial work and additional construction after plaintiff left the job, without assigning a dollar amount to the alleged corrective work. Paul Charbonnet, the discharged architect who was reemployed by defendants to make an estimate after the dispute between these litigants erupted, stated it would cost $72,521.68 to remedy plaintiff’s defective construction. He failed to give a breakdown of cost and labor in detail but he did mention that painting alone would cost $18,000.00. In view of the fact that this figure was 2Vá times greater than the total amount of the original painting subcontract, the trial court stated it could not accept this figure.
In his reasons for judgment dictated into the record, the trial judge stated:
“The Court has no doubt that there was some corrective work to be done but is unable to arrive at any cost that would be involved in doing this corrective work. As I was saying, Mr. Charbonnet gave the only estimate that was introduced as to cost and, his was a lump sum based on a list that was made by Mrs. Webb. He has no corroboration or he has no detailed breakdown as to what the cost of this work would be from any contractor except one that got in — I don’t know whether I would or would not have let it in; it may have been a proffer, had I realized at the time, but it was a sheet-rock estimate of $5,442 and I note that Counsel for Defendants and Plaintiffs in reconvention did proffer another breakdown of $18,000, roughly, for painting. The Court would note that that is two and a half times as much as was paid for the original painting work on the house. So, it would be beyond the ability of the Court to arrive at an amount that would be due for any corrective work simply because the Plaintiffs have failed to carry the burden of proof as to what the costs of this corrective work may be * *
We fully agree with his analysis of the evidence that some defects did exist but that the defendants failed to prove the costs necessary to correct them and affirm his dismissal of the reconventional demand.
Finally appellant complains the trial court erred in not granting a new trial based on newly discovered evidence. At the trial, Charbonnet, subpoenaed some two weeks before, failed to bring his file on this construction. He testified he had no complaints as to the quality of plaintiff’s workmanship until his discharge in June 1973; however, defendants allege that after the trial the architect discovered letters in his file directed to Thomas Builders in which complaints in construction are outlined for times prior to the June termination. Without commenting on what effect if any these letters would have, we point out that C.C.P. art. 1972 makes the granting of a new trial peremptory when newly discovered evidence becomes available after the trial. However, the applicant must show that even with due diligence it could not have been obtained or produced during the trial. The correspondence in question was available prior to trial and upon discovering that Mr. Charbonnet did not have it physically in his possession, no request for a recess was made in order to produce it.
For the reasons assigned, the judgment appealed from is affirmed at appellants’ cost.

AFFIRMED.

. The building contract provided for construction of a two-story brick veneer residence containing 12 rooms and three baths for the contract price of $127,571.00. It was executed on September 7, 1972 and had a specified completion date of May 11, 1973. The five change orders for extras were as follows: March 26, 1973, $3,831.80; April 20, 1973, $6,700.00; June 12, 1973, $4,048.24; July 26, 1973, $5,325.67; and October 5, 1973, $4,069.77.